# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JANET, B.[1]**, | Case No. 3:22-cv-1099-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Betsy R. Shepherd, 425 Riverwalk Manor Dr. Dallas, GA 30132. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Frederick Fripps, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Janet B. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

insurance benefits (DIB). For the following reasons, the Court reverses the Commissioner's decision and remands for further proceedings.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225.

# BACKGROUND

## A.  Plaintiff's Application

Plaintiff applied for DIB on April 8, 2019, alleging a disability onset date of December 11, 2017. AR 63. Plaintiff's date of birth is September 24, 1974, and she was 43 years old as of the alleged disability onset date. *Id.* The agency denied Plaintiff's claims both initially and upon reconsideration, and Plaintiff requested a hearing. AR 76, 89, 110. Plaintiff appeared before an ALJ for a hearing on May 19, 2021. AR 32. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 13-25. Plaintiff appealed the decision to the Appeals Council, which denied review, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff now seeks judicial review.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

**C.  The ALJ's Decision**

As a preliminary step to Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status through March 31, 2023. AR 15. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 11, 2017. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease, depression, anxiety, and obesity. *Id.* At step three, the ALJ determined that none of the impairments, either individually or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17.

The ALJ next determined Plaintiff's Residual Functional Capacity (RFC) and found that Plaintiff could perform light work as defined in 20 CFR § 404.1567(b), with the following limitations:

> [Plaintiff] can lift and carry up to 20 pounds occasionally and 10 pounds frequently, sit, stand, and walk six hours in an eight-hour day, occasionally climb ramps and stairs, occasionally stoop,

kneel, crouch, and crawl, never climb ladders, ropes, or scaffolds, never have exposure to hazards, and never have exposure to dusts, odors, fumes, or pulmonary irritants. Mentally, [Plaintiff] can perform simple tasks at jobs with a reasoning level 2 or less with occasional interaction with coworkers, supervisors, and the public. Finally, [Plaintiff] would be off task less than five percent of the workday occurring over a normal eight-hour workday.

AR 19.

At step four, the ALJ determined that Plaintiff was not capable of performing her past relevant work as a nurse's assistant. AR 23. At step five, relying on testimony of a vocational expert (VE), and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including Inspector Hand Packager (35,000 jobs in the national economy), Cannery Worker (50,000 jobs in the national economy), and Garment Sorter (25,000 jobs in the national economy). AR 24. Accordingly, the ALJ concluded that Plaintiff was not disabled from the alleged onset date through July 21, 2021, the date of the ALJ's decision. AR 25.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly discounting Plaintiff's subjective symptom testimony; (2) improperly discounting the medical opinion of Plaintiff's chiropractor Dr. Todd Gillingham; (3) improperly evaluating the lay witness testimony of Plaintiff's daughter, Lawannen B., and Plaintiff's husband Joseph B.; and (4) posing vocational hypotheticals to the VE that did not include all of Plaintiff's limitations. Each alleged error is addressed in turn.

## A.  Plaintiff's Testimony

### 1.  Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated

affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 2.  Analysis

The ALJ does not dispute that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and the ALJ made no finding of malingering. Accordingly, the Court moves to the second step of the credibility analysis, at which the ALJ was required to make specific, clear, and convincing findings to support his rejection of Plaintiff's testimony. *Lingenfelter*, 504 F.3d at 1036. The ALJ found that the objective medical evidence was inconsistent with the degree of impairment Plaintiff reported and asserted that Plaintiff's ability to perform activities of daily living contradicted Plaintiff's allegations. AR 20. Plaintiff first argues that the ALJ failed to specifically identify testimony was inconsistent with what evidence in the record. Plaintiff also argues that the reasons provided by the ALJ were not clear and convincing and supported by substantial evidence.

#### a.  Specificity

An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592)). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a claimant's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply

reciting the medical evidence in support of his or her residual functional capacity determination"
but must "specify which testimony she finds not credible," and the district court may not "comb
the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489, 494
(quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)); *see also Lambert*, 980 F.3d
at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical
history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's
symptom testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d
at 494)); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his
RFC and summarized the evidence supporting his determination" the court could infer "that the
ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence").
Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to
the particular parts of the record supporting her non-credibility determination." *Brown-
Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

      Plaintiff contends that the ALJ erred in failing to identify specific aspects of the record
that deviated from specific aspects of Plaintiff's testimony. The ALJ, however, did specify
testimony that he found not credible and cited portions of the record that the ALJ found not to
support that testimony, as follows:

> Despite the claimant's allegations that she experienced no relief
> from lumbar epidural steroid injections, oral opioid pain
> management, muscle relaxers, and neuropathic medication,
> subsequent evidence did not suggest disabling symptoms.
> Specifically, at certain exams, the claimant denied back pain, joint
> pain, joint swelling, weakness, or numbness. She also reported no
> difficulty with walking. (7F108, 15F3, 14, 56).

AR 20-21.

### b. Daily Living Activities

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

In discussing the functional limitations of Plaintiff's severe back impairment, the ALJ cited evidence of Plaintiff's ability to take care of and clean herself, prepare meals, drive,

grocery shop, attend church, spend time with family, and care for a foster child. AR 23 (citing AR 231-40, AR 296-303). The ALJ mischaracterized several of these activities. On Plaintiff's ability to care for her foster niece, the ALJ ignores that Plaintiff's function report states that her husband does most of the care for her niece. AR 297. Furthermore, a claimant's ability to care for her children, without more, does not constitute an adequately specific contradiction with her reported limitations. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017); *see also Revels v. Berryhill*, 874 F.3d 648, 667-68 (9th Cir. 2017) (claimant consistently described severe limitations in all of her ADLs, despite identifying relatively numerous activities). On Plaintiff's ability to take care of and clean herself, the ALJ did not discuss Plaintiff's testimony and function reports indicating that she needs help with her personal hygiene and getting dressed, and the lay witness reports supporting this testimony. AR 45, 330, 332-33, 340. As for Plaintiff's ability to cook and clean, the ALJ fails to consider that Plaintiff reported that her husband does most of the cooking, and that Plaintiff's daughter had to move in with her to care for her and help with household chores. AR 297, 299-300. Indeed, Plaintiff reported that the extent of her cooking ability is being able to make a sandwich "every once in a while." AR 298. Regarding Plaintiff's ability to grocery shop, Plaintiff's function report from 2019 states that she could grocery shop using an electric scooter with her husband, however, in 2021 she testified that she could no longer shop anymore. AR 47. The medical record supports this given that Plaintiff's back pain was so severe that she fell walking out of the grocery store. AR 2109. Furthermore, the Ninth Circuit has long held that the performance of such routine tasks does not justify discounting subjective symptom testimony. *See Vertigan*, 260 F.3d at 1050 (holding that routine activities such as walking and running errands were insufficient to discredit claimant's testimony where the "physical activities did not consume a substantial part of [claimant's] day."). Lastly,

Plaintiff's ability to go to church and spend time with family was mischaracterized as well. Plaintiff used to attend church and go to family events, but more recently, she has been unable to attend social events and church. AR 236, 343. Instead, family comes to visit her. AR 334.

The activities of daily living cited by the ALJ are not inconsistent with Plaintiff's testimony that she is unable to sit, stand, or walk for long enough periods to make it through a typical workday without breaks. The key issue here is whether Plaintiff can sustain activity for a full workday and work week. Plaintiff's attempts to maintain basic levels of care for her family despite the symptoms of her back injury do not equate to a full time job or undermine her testimony about the severity of her overall disability. *See Vertigan*, 260 F.3d at 1050. Considered within the context of Plaintiff's back injury, and without more specific information about the frequency, duration, and progression of Plaintiff's symptoms, these listed activities do not give the ALJ a clear and convincing reason supported by substantial evidence to disregard Plaintiff's testimony. The Court finds that the ALJ erred in discounting Plaintiff's subjective complaints.

### c. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. §§ 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

In discounting Plaintiff's symptom testimony, the ALJ relied most heavily on a lack of objective medical evidence supporting the severity of Plaintiff's allegations. AR 20-23. While noting Plaintiff experienced no relief from lumbar epidural steroid injections, opioid pain management, muscle relaxer, and neuropathic medication, the ALJ found that evidence of plaintiff denying pain at certain exams discredits her disabling symptoms. AR 20. The ALJ also relied on many reports showing Plaintiff's physical exams were in normal, or mostly normal, range. AR 21. The ALJ relied on this record to question whether the degree of functional impairment Plaintiff professed met her true capabilities. Even if this objective medical evidence does not support Plaintiff's claimed limitations, that alone does not provide a clear and convincing reason to discount her testimony. *Robbins*, 466 F.3d at 883.

The ALJ also mischaracterized the objective medical evidence in the record. The ALJ stated without citation to the record that despite Plaintiff's allegations regarding her impairments, by the beginning of March 2018, Plaintiff was "released back to sedentary work." AR 20. This appears to be a reference to a March 2, 2018 chart note in which her provider Timothy A. Hill, MD, stated that he released Plaintiff "to sedentary work on a part-time basis." AR 1377. During that visit, Dr. Hill noted that Plaintiff presented in a wheelchair, and struggled with severe pain since stopping Percocet. The ALJ also referred to Plaintiff's follow up appointment after a lumbar strain where Plaintiff stated that she was "open" to returning to sedentary work. AR 20 (citing AR 1372, 1379). The doctor's summary stated that Plaintiff was open to returning to sedentary work, but the detailed recitation and other records provide context for that comment. The chart note explained that Plaintiff was "advised that she should have gradual healing with time," that she should start physical therapy for further rehabilitation, and that she "may begin a graduated return to work program" at the sedentary level. AR 1373. Plaintiff followed these

recommendations and went to physical therapy, but then had to have umbilical hernia repair surgery shortly thereafter. AR 1403, 1467. Plaintiff did not return to work until 2019 after her gastric bypass surgery, and even in doing so, her employment was very short lived, as she was unable to sustain the activity required to be a substitute teacher. AR 199.

The ALJ also relied on statements made by Plaintiff's primary care provider, Dr. Nicholas Blake to discount Plaintiff's symptom testimony. AR 21. In August 2019, Dr. Blake noted "I have seen her a number of times for back pain and referred her to Dr. Belza who has also seen her several times. She does have a few minor findings on MRI but I am not sure these would qualify her for disability. Since her bariatric surgery and weight loss, she has certainly become much healthier and physically capable." AR 2077. The ALJ asserted that Dr. Blake "did not support her application for disability related to her back impairment" given that Dr. Blake noted he was not sure the MRI findings would qualify plaintiff for disability benefits. AR 21. It was improper for the ALJ to rely on this statement from Dr. Blake because under the agency rules, a doctor cannot state that a claimant is "disabled" or "not disabled" because doctors are not qualified to interpret the agency's rules for eligibility. *See* 20 C.F.R. § 404.1520b(c)(3). Furthermore, Dr. Blake's statement was equivocal and he advised Plaintiff to see a specialist to get a disability assessment. AR 2077. The Court concludes that the ALJ erred in discounting Plaintiff's subjective symptom testimony.

**B.  Medical Evidence**

**1.  Standards**

Plaintiff filed her application for benefits on April 8, 2019. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer

"weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R.

§ 404.1520c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state

that the agency does not defer to any particular medical opinions, even those from treating

sources. *Id.*; *see also Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022) ("The revised social

security regulations are clearly irreconcilable with our caselaw according special deference to the

opinions of treating and examining physicians on account of their relationship with the

claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and

"consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R.

§ 404.1520c(c). Supportability is determined by whether the medical source presents

explanations and objective medical evidence to support his or her opinion. 20 C.F.R.

§ 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence

from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking

to factors such as the length of the treatment relationship, the frequency of the claimant's

examinations, the purpose of the treatment relationship, the extent of the treatment relationship,

and whether there is an examining relationship. 20 C.F.R. § 404.1520c(c)(3). An ALJ is not,

however, required to explain how he or she considered these secondary medical factors, unless

he or she finds that two or more medical opinions about the same issue are equally well-

supported and consistent with the record but not identical. 20 C.F.R. § 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the

medical opinions" and "explain how [they] considered the supportability and consistency

factors." 20 C.F.R. § 404.1520c(b). The Court must, moreover, continue to consider whether the

ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also*

*Woods*, 32 F. 4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

**2.  Analysis**

Dr. Mark Mullins, D.C. began treating Plaintiff as her chiropractor in April 2016 and continued treating her once a month. AR 2160. Dr. Mullins has treated Plaintiff for conditions including her herniated lumbar disc with radiculopathy and her moderate cervical and lumbar osteoarthritis. *Id.* In 2021, Dr. Mullins expressed that because of Plaintiff's lower back pain and numbness radiating to her left leg, Plaintiff would need to take six unscheduled breaks every workday for ten to twenty minutes each time, and that Plaintiff would be absent two days each month due to intermittent flare ups of pain. AR 2162-63. Dr. Mullins opined that Plaintiff would be able to sit for four hours, stand and walk for two hours, and would need to recline for two hours in an eight-hour workday. AR 2161. The ALJ found Dr. Mullins' opinion unpersuasive, reasoning that the longitudinal record does not support the significant limitations opined. AR 22-23. Plaintiff contends that the ALJ improperly addressed the medical evidence because he discounted Dr. Mullins' opinion without substantial evidence.

Regarding "supportability," the ALJ discounted Dr. Mullins' opinion by finding it not supported by notes from medical examinations where Plaintiff presented with a normal gait, intact sensation, and normal strength, and reported feeling better. AR 22-23 (citing AR 440, 450, 505, 518, 523, 1418, 1608, 1812, 1816-17, 2059, 2068). The ALJ, however, did not address medical records that supported Dr. Mullins' opinion. Nor did the ALJ consider the context of Plaintiff's reports of "feeling better" with respect to her allegations of limitations from back pain.

These citations from the ALJ are from Plaintiff's treatments for anxiety-related chest pain, respiratory distress, abdominal pain, shortness of breath, possible thrush, and low blood pressure. *Id.* Given that these examinations were largely focused on Plaintiff's panic attacks, conversion disorder, and respiratory distress, these medical records are not inconsistent with Dr. Mullins' opinions regarding Plaintiff's back pain.

The ALJ did not address the consistency factor when discrediting Dr. Mullins' opinion. This was error, given that at a minimum it is necessary for an ALJ to specifically account for the legitimate factors of supportability and consistency when addressing the persuasiveness of a medical opinion. *See Kevin R. H. v. Saul*, 2021 WL 4330860, at *4 (D. Or. Sept. 23, 2021).

The Court finds that the ALJ did not rely on substantial evidence when determining that Dr. Mullins' opinion was unpersuasive and inconsistent with the record. Additionally, the ALJ erred by failing to address the consistency factor, and therefore did not properly consider the evidence pursuant to social security regulations. 20 C.F.R. §§ 404.1520c(c).

## C. Lay Witness Testimony

### 1. Standard

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony about a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay witness testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

### 2.  Analysis

Plaintiff's husband and daughter submitted Third-Party Function Reports on behalf of Plaintiff's DIB claim. AR 330-345. Plaintiff's daughter, Lawannen B., indicated in her report that she moved from out of state to live with Plaintiff to assist with her daily needs. AR 330. Plaintiff's husband and daughter both noted that Plaintiff needs help with getting dressed, bathing, shaving, using the bathroom, cooking, handling her finances, and taking the correct dosage of her medications. AR 330-32, 334, 338-340.

The ALJ stated that he "considered" the lay witness statements but he "decline[d] to evaluate the[ir] persuasiveness" because he they are not "opinions" under current social security rules and regulations. AR 22. The Commissioner argues this was not error because the revised regulations describing how to evaluate medical opinion testimony state that nonmedical opinion

testimony need not be evaluated using the same criteria as medical opinions. *See* 20 C.F.R. §§ 404.1520c(d); 416.920c(d). This argument is unpersuasive.

The revised regulations describe how to evaluate medical opinion testimony. The fact that the regulations state that nonmedical opinion testimony *is not held* to the same standard as medical opinion testimony says nothing about the standard to which nonmedical opinion testimony *is held*. Thus, the new regulations are not "clearly irreconcilable" with existing caselaw and are insufficient to overrule binding Ninth Circuit precedent that an ALJ must comment on lay witness testimony and provide germane reasons to discount it. *See Woods*, 32 F.4th at 790 ("Our precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations.").

The Commissioner also argues that any error the ALJ committed in failing to address the lay witness submissions was harmless because the lay testimony was substantially similar to Plaintiff's testimony, and that the Court can therefore discount the lay testimony for the same reasons the ALJ rejected Plaintiff's testimony. Because the Court rejected the ALJ's reasons to discount Plaintiff's testimony, those reasons do not provide a basis to discount the lay testimony. Thus, the ALJ committed harmful error.

**D.  ALJ's Step Five Finding**

Plaintiff argues that the ALJ's step five finding is erroneous because the dispositive hypothetical question posed to the VE did not account for all of Plaintiff's limitations. A hypothetical posed to the VE must be complete and "include all of the claimant's functional limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's

hypothetical does not reflect all the claimant's limitations, then the testimony has no evidentiary value.").

This argument is well taken. Because the ALJ failed properly to evaluate Plaintiff's subjective symptom testimony and the medical opinion testimony, the RFC and hypothetical posed to the VE may not have incorporated all of Plaintiff's limitations. Thus, the ALJ erred in relying on the VE testimony that there were significant jobs in the economy that Plaintiff could perform.

## E.  Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the

improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed reversible error for failing to provide legally sufficient reasons for rejecting plaintiff's subjective symptom testimony, Dr. Mullins' medical opinion, and the lay witness testimony. The Court does not, however, find that the record is free of all conflicts and ambiguities. The ALJ needs to explain his reasoning regarding the lay witness testimony and there are conflicts among, for example, some of the medical provider opinions and Plaintiff's testimony. For example, in 2018, Dr. Timothy Hill reported that Plaintiff's "pain appears to be a bit out of proportion to objective findings." AR 1381. Based on Plaintiff's testimony and function reports, it is also unclear what activities Plaintiff can do given the conflicting testimony and reports from 2019 through 2021. The Court therefore declines to remand for an award of benefits.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 19th day of October, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge